CITY OF SOUTHPORT v. PRUDENCE STANLY.

(Decided December 19, 1899.)

*Municipal Authorities—Power to Sell Town Property—The Code, Sec. 3824—Limitations.*

1. The power granted by The Code, sec. 3824, to the town authorities to sell town property does not extend to the sale or lease of any real estate, which by the terms of the act of incorporation is to be held in trust for the use of the town, or to such real estate with or without the buildings on it as is devoted to the purposes of government, including town or city hall, market house, houses used for fire departments, or for water supply, or for public squares or parks.    In respect thereto, there must be a special act authorizing such lease or sale.

2. The Legislature itself would be wanting in power to confer upon town or city the right to sell public streets, in reference to which bordering property owners had located their improvements.    *Morse v. Carson,* 104 N. C., 431.

ACTION OF EJECTMENT, tried before *Allen, J.,* at March Term, 1898, of the Superior Court of BRUNSWICK County. Jury trial waived.

The present town of Southport was originally incorporated and known as Smithville.    The Commissioners of Smith-

ville had conveyed to W. H. Craig, in 1883, by lease for 99 years, a portion of a town lot reserved in the charter for the use of the town.   Craig conveyed his interest in the unexpired lease to the defendant in 1892, and she is in possession. The authorities of Southport being of opinion that the lease made by their predecessors was *ultra vires,* brought this action to recover the property.

His Honor rendered judgment in favor of defendant, and plaintiffs excepted  and appealed.

*Messrs. Bellamy & Peschau,* for appellant.
No counsel, *contra.*

MONTGOMERY, J.   This is an action brought by the plaintiffs to recover the possession of a piece of land situated in the town of Southport.   The town of Southport was originally incorporated in 1792, under the name of Smithville. The name Smithville was changed to Southport by an Act of Assembly of 1887, but no other changes were made by the last-mentioned act  in the provisions  of  the  old  charter. Under the original charter, 150 acres of the State's lands were appropriated to the town of Smithville, and were vested in certain Commissioners and trustees named in the charter. These Commissioners and trustees, in the words of the act, "were authorized and required to lay out a town containing 100 lots, to consist of a half-acre each, or thereabouts, with convenient streets and squares, which lots, streets and squares are hereby constituted and erected a town, and shall be called and known by the name of Smithville, and the surplus of land shall remain as a common for the  use  of  the  said  town *      *      *      and the Commissioners      *      *      *      are hereby required to make, or cause to be made, a fair plan of said town, and mark, or number, each lot therein, and, after

reserving ten lots for the use of said town, shall take subscriptions for the remainder from such persons as may be willing to subscribe for the same, etc." In the year 1883, a former Board of Commissioners of the then town of Smithville undertook to convey, by deed of lease for 99 years, the piece of land described in the complaint to W. H. Craig, the lessor of the defendant in this action. The piece of land in question is a part of one of the lots reserved for the use of the town, and the main question in the case is, whether the act of the Commissioners, in attempting to make the lease, was *ultra vires.*

The defendant's contention is, that the lease is good under the provisions of sec. 3824 of The Code. The language of that section is as follows: "The mayor and Commissioners of any incorporated town shall have power at all times to sell at public outcry, after thirty days' notice, to the highest bidder, any property, real or personal, belonging to any such town, and apply the proceeds as they may think best." The question presented for our decision then, brings up for construction the above-quoted section of The Code. The power of the General Assembly to authorize the governing authorities of a town or city to sell or lease any real estate of the town or city, whether it be parks, squares, public buildings used for the purpose of town government, or other buildings, or places necessary to properly protect or govern the town, is not before us. If it was, there would not be a moment's hesitation in declaring that such power exists. The only limitation on the power of the General Assembly in the matter would be, that that body could not divest or provide for divesting the rights of the owners of lots having a property or easement in the adjacent streets or alleys with reference to which they invested their money in the lots, and the improvements placed upon them by undertaking to confer upon the town or city, or

upon any others, the power to sell the same for the benefit of the town or city. *Moose v. Carson,* 104 N. C., 431.

But the question before us is, does the statute (Code, sec. 3824), confer upon the governing bodies of towns and cities power to dispose of such property of the town or city as we have mentioned. We are of the opinion that it does not. It is clear that if such a power existed under the statute, it would be in the power of the governing authorities of a town or city to practically annul its charter—a thing which certainly could not be done except by the General Assembly, through a bill enacted for that purpose. If the Commissioners or Aldermen could, under the section of The Code above quoted, sell one public square or park, or building used for government purposes, why they could logically sell every building owned by the town, and every public square, and by that means destroy the means of properly governing the municipality, and also greatly impair the value of all real estate within the city or town limits. It is true such action on the part of the Commissioners might not be probable, but it could be done—it is possible that it could be done—under the construction which the defendant put upon The Code section. The reasonable construction of the statute must be that the town or city authorities can sell any personal property, or sell or lease any real estate which belongs to the town or city as the surplus of the original acreage ceded for the town or city site, or such land as may have been subsequently acquired or purchased: But in no case can the power be extended to the sale or lease of any real estate which, by the terms of the act of incorporation, is to be held in trust for the *use* of the town, or any real estate with or without the buildings on it which is devoted to the purposes of government, including town or city hall, market houses, houses used for fire departments or for water supply, or for public squares or parks. To

enable the town or city authorities to sell such of the real estate of the towns or cities as is mentioned just above, there must be a special act of the General Assembly authorizing such lease or sale. The facts were found by consent by the Court, and judgment rendered for the defendant and against the plaintiff, and there is error in the judgment.

Reversed.