F. ELI WISHART AND WIFE, HALLIE F. WISHART, S. H. WELSH AND WIFE, VIVIAN P. WELSH, C. G. TOWNSEND, E. A. SUNDY AND WIFE, FRANCES C. SUNDY, AND KATE B. BIGGS v. CITY OF LUMBERTON, A MUNICIPAL CORPORATION.

(Filed 3 February, 1961.)

**1. Injunctions § 8: Municipal Corporations § 17—**

Injunction will lie to prevent a municipal corporation from putting public property to an unauthorized use.

**2. Municipal Corporations § 17—**

   Where a municipal corporation purchases or acquires property by gift for a specified use, or acquires property without any limitation on its use and thereafter dedicates the property to a particular use, it may not, without legislative authority, thereafter dispose of the property or put it to an entirely different and inconsistent use.

**3. Same—**

   The power given municipalities to establish and regulate parks does not authorize a municipality to abandon an established park. G.S. 160-200(12).

**4. Same:    Injunctions § 13—**

   Where there is *bona fide* controversy as to whether a municipality had acquired land for a public park or, after the acquisition of the land, had permanently dedicated it to such use, a temporary order restraining the municipality from using such land for a public automobile parking lot is properly continued to the hearing upon the merits.

APPEAL by defendant from *Carr, J.*, at Chambers in *Robeson* on 24 January, 1960.

Plaintiffs, as citizens and taxpayers of Lumberton, seek to enjoin the governing authorities of Lumberton from using as a public parking lot an area owned by the town. They allege the area, which contains about one acre, has heretofore, with legislative permission, been permanently set aside as a public park, and that no authority exists for an inconsistent use such as parking of motor vehicles.

Defendant demurred *ore tenus*. The demurrer was overruled. It answered alleging: The area was acquired many years ago without limitation with respect to its use. It was first used as a public cemetery. Some time after this use was terminated, the 1925 Legislature gave the municipality authority to use the land as a park, playground, or other public purpose. It denies the area has been dedicated as a permanent park. It alleges the area is not now suitable as a park or playground, but a portion is needed to enlarge the present fire station and the remainder, as a parking area to relieve traffic congestion.

Judge Carr heard the evidence offered by the parties in support of their contentions. He concluded plaintiffs' evidence was sufficient to establish *prima facie* a dedication of the area as a public park; and because its proposed use would destroy its value as a park, he continued the restraining order to the final hearing. Defendant excepted and appealed.

*McLean & Stacy for plaintiff appellees.*
*E. M. Johnson for defendant, appellant.*

RODMAN, J.  The demurrer was properly overruled. If the governing authorities were preparing to put public property to an unauthorized use, citizens and taxpayers had the right to seek equitable relief. *Rheinhardt v. Yancey,* 241 N.C. 184, 84 S.E. 2d 655; *Jamison v. Charlotte,* 239 N.C. 682, 80 S.E. 2d 904; *Brown v. Candler,* 236 N.C. 576, 73 S.E. 2d 550; *McGuinn v. High Point,* 219 N.C. 56, 13 S.E. 2d 48; *Bowles v. Graded Schools,* 211 N.C. 36, 188 S.E. 615; *Carstarphen v. Plymouth,* 180 N.C. 26, 103 S.E. 899; *Vaughan v. Commissioners,* 118 N.C. 636, 24 S.E. 425; 52 Am Jur. 10.

"Where property is dedicated or set apart without restriction merely for public uses, the municipal authorities may determine for what use it is appropriate and shall be used, and, if not irrevocably dedicated or appropriated by them to any particular public use, its use may be changed as the public convenience and necessities require." 64 C.J.S. 299. Where, however, property is purchased for the declared purpose of use as a public park or dedicated by gift for that purpose, or if acquired without any specific intent as to its use, has thereafter been definitely set aside for the sole and specific use as a public park, the governing authorities of a municipality may not, without legislative authority, dispose of the property or put it to an entirely different and inconsistent use. *Blue v. Wilmington,* 186 N.C. 321, 119 S.E. 741; *Harris v. Durham,* 185 N.C. 572, 117 S.E. 801; *Carstarphen v. Plymouth, supra; Raleigh v. Durfey,* 163 N.C. 154, 79 S.E. 434; *Southport v. Stanly,* 125 N.C. 464; *Spicer v. Goldsboro,* 226 N.C. 557, 39 S.E. 2d 526 (The difference between a park and a parkway in a public street is noted.); *Zachry v. City of San Antonio,* 305 S.W. 2d 558; *Aldrich v. City of New York,* 145 N.Y.S. 2d 732; *Williams v. Gallatin,* 128 N.E. 121, 18 A.L.R. 1238; *Wright v. Walcott,* 131 N.E. 291; Annotations 18 A.L.R. 1246; *Lowell v. City of Boston,* 79 N.E. 2d 713; *Bloemer v. Turner,* 137 S.W. 2d 387; *Smith v. Town of Hot Springs,* 240 P 2d 249; *Carson v. State,* 38 N.W. 2d 168; *City and County of San Francisco v. Linares,* 106 P 2d 369.

Apparently the Legislature has not given Lumberton any special authorization to abandon any of its public parks. We find none in its charter; none has been called to our attention. Legislative permission has been given municipalities to abandon specific uses of public properties. They may close streets, G.S. 160-200 (11), abandon cemeteries, G.S. 160-200 (36), and sell public utilities, G.S. 160-2 (6). They are authorized to establish and regulate parks, G.S. 160-200 (12), and adopt such ordinances for the use and regulation of streets, parks, and other public property belonging to the city as they may deem best for the public welfare of the citizens of the city, G.S. 160-

200(12). The right to regulate is not broad enough to authorize an abandonment.

Since the Legislature has not seen fit to delegate to the governing authorities of Lumberton the right to abandon and put to an inconsistent use property which has been permanently dedicated as a public park by its city council, it is necessary to determine whether the area has been so appropriated. The pleadings make this an issue of fact. In determining that fact we think the language of the Court of Appeals of Kentucky in *Massey v. City of Bowling Green*, 268 S.W. 348, pertinent. It said: "A city may own property for which it has no present use, and permit it to be used temporarily for any legitimate purpose, or property devoted to a specific use may become unsuited for that purpose and a change of use become necessary, and it cannot be contended that every purpose for which it is thus used fixes its status irrevocably. If so, a city dump would remain a dump forever, though by reason of abutting development it became highly desirable for other purposes. . . .

"Public parks are essential to the proper enjoyment of urban life, and their establishment and maintenance should be encouraged in every legitimate way; but to irrevocably establish such a park or dedicate municipal property thereto by user there should be such action upon the part of the city and so continued for such a length of time as to manifest a clear and unequivocal intention for the property to be devoted to that purpose only. Perhaps, where a city has paid funds out of its treasury in making improvements for park purposes on lands owned by it to such an extent that it would be inequitable to abandon it or change its use, this might be constructed as an establishment thereof."

The restraining order was properly continued in effect pending the final hearing. *Cobb v. Clegg*, 137 N.C. 153.

Affirmed.